SOCIETE BORDELAISE DE CONSERVES AND PRODUITS ALIMENTAIRES, Respondent, v. WOOD & SELICK, Appellant.

First Department, June 13, 1919.

**Sale — contract — compliance by plaintiff with terms as condition precedent to recovery for breach — effect of sale by defendant of initial delivery of goods at profit — verdict against weight of evidence — instructions to jury.**

In an action to recover damages for a breach of contract the plaintiff, to succeed, must show a full performance on his part of all the conditions of the contract, where there is no allegation of a waiver of any condition.

Therefore, where a contract called for the delivery of " dipping " cherries, a grade well known to the trade, and which were stipulated to run 900 to 1,000 to the gallon, the plaintiff cannot recover for a breach on the part of the defendant on proof of delivery of cherries running from 100 to 150 and upwards more than the stipulated amount to the gallon.

The fact that the defendant was able to sell the initial shipment of cherries, which did not conform to the grade purchased, at a price that enabled him to make a profit does not relieve the plaintiff from showing a strict compliance with the terms of the contract.

An examination of the evidence was held to show that the verdict of the jury to the effect that the plaintiff delivered " dipping " cherries according to its contract was clearly against the weight of the evidence.

A request by the defendant to the court to charge that unless the jury found that the initial shipment complied in all respects with the contract of sale they must find for the defendant, should have been given, and it was error for the court to charge that a compliance generally with the contract was sufficient.

APPEAL by the defendant, Wood & Selick, from a judgment of the Supreme Court in favor of the plaintiff, entered in the

office of the clerk of the county of New York on the 14th day of January, 1919, upon the verdict of a jury, and also from an order entered in said clerk's office on the 20th day of January, 1919, denying defendant's motion for a new trial made upon the minutes.

The judgment also denied the right of the defendant to recover upon a counterclaim set up in its answer.

*Hector W. Thomas* of counsel [*Woolsey A. Shepard* with him on the brief; *Thomas & Houghton,* attorneys], for the appellant.

*Justin S. Galland* of counsel [*Ashley, Foulds & Galland,* attorneys], for the respondent.

Smith, J.:

The plaintiff is a French corporation, doing business in France and organized there. The defendant is a corporation organized under the laws of New Jersey and doing business in the city of New York. The action was brought to recover damages sustained by plaintiff arising from defendant's refusal to accept and pay for certain merchandise contracted for. The answer admitted the making of the contract and the defendant's failure to perform thereunder, but denied that the plaintiff performed all the conditions upon its part to entitle it to a recovery, and alleged accord and satisfaction and breach of warranty, with a counterclaim for damages. At the trial the alleged defense of accord and satisfaction was withdrawn, leaving the answer only a denial of the allegations of the complaint upon which the plaintiff sought to recover and the breach of warranty asserted in its counterclaim. The contract was made on June 5, 1914, and it purported to be between the plaintiff and the defendant for the sale to the defendant of cherries, the shipments to be executed by ten monthly shipments of fifty barrels each. The five hundred barrels of cherries were ordered " for dipping," from " 900 to 1000 cherries to the gallon." It was then provided that goods were to be colored with certified color and also to be flavored with genuine almond flavor, and also preserved in one-tenth of one per cent benzoate of soda, all goods guaranteed to comply with the regulations of the National

Pure Food and Drug Act of June 30, 1906. It appears from the evidence that there are various grades of cherries dealt with in this market. There are, *first*, the large whole cherries; *second*, the dipping cherries; *third*, the whole and broken cherries; and, *fourth*, the crushed cherries. The large whole cherries are those that run approximately 750 to the gallon and are not considered a dipping cherry. The crushed cherry is a debris of the cherries, and the whole and broken are cherries that are broken and split up when they are pitted. The broken cherry is also referred to as debris, but this does not imply that it was damaged and wholly useless. On the contrary, it was an article that was dealt in in the trade. The evidence indicates that there is no question as to what a dipping cherry is. It is a whole firm cherry of uniform size, of high grade, carefully selected. The large cherry is what is known as a cocktail cherry, and also as a " glace " cherry. The whole and broken are used by fruit dealers, ice cream manufacturers and by bakers to decorate. The use of the dipping cherry is described by one of the plaintiff's witnesses as follows: " The dipping cherry is used for a specific purpose, namely, to be covered with sugar and coated with chocolate, and hence its name." " In other words, broken pieces will not do." It seems that these dipping cherries had been furnished to defendant by Hungerford-Smith & Co. of Rochester and were sold generally to the confectioners in this country. The defendant went to Delapenha & Co., who were agents representing the plaintiff in this country, and asked them if they could get this cherry from France. Delapenha said he would correspond with his principal, and he did, and the result was the contract in question. In the course of time the plaintiff sent over to the defendant three small casks of cherries. Each cask was delivered to the defendant by the agent of the plaintiff, and what became of them does not appear in the course of the trial. On July second, however, the plaintiff shipped four barrels of cherries, sometimes in the evidence called casks, which arrived in New York on July twenty-seventh. Of these shipments, three barrels were delivered to the plaintiff's agent, and by the plaintiff's agent to the defendant, and one remained in the public stores. It seems that Mr. Moses, one of the employees of the defendant, had charge of the

First Department, June, 1919.          [Vol. 188.

selection of these cherries. He was away on his vacation. Delapenha, the plaintiff's agent, together with the treasurer and one of the vice-presidents of the defendant, opened these cherries, and it does not appear that there was any complaint of the cherries made at that time. The defendant says they were to be submitted to Moses. At that time Delapenha dictated to one of the defendant's stenographers a letter to Mr. Moses, stating that the cherries were in first-class condition. They were sent on to the Chocolate Products Company of Baltimore, of which one Mr. Guth seems to have been the principal man. These cherries were purchased for an order which had been given by Mr. Guth for the Chocolate Products Company of Baltimore for four hundred barrels of these cherries. These three barrels, as I say, were sent on to Mr. Guth, and as soon as Mr. Moses returned from his vacation he went to Baltimore and with Mr. Guth examined the cherries. The evidence both of Mr. Moses and of Mr. Guth is to the effect that these cherries were soft and were not suitable for dipping, that they were badly broken and that they were not uniform in size, and that each barrel contained two thirty-pound pails of debris, of broken cherries. The cherries had been badly torn by being badly pitted. It seems, for these dipping cherries, you have to pit them by hand, taking the pit out very carefully, and when they are pitted by machinery it tears the cherries so that they cannot be used for that purpose. The defendant then canceled its letter of credit. There were some further transactions, which will be referred to hereafter in the opinion as bearing upon the questions hereinafter discussed.

This action is brought upon an allegation in the complaint of full performance of the conditions of the contract on the part of the plaintiff. There is no allegation that any of the stipulations in the contract had been waived by the defendant. The plaintiff must succeed by showing full performance on its part of all the conditions of the contract. This the plaintiff has confessedly failed to do, because it appears by the letter of Delapenha to Moses, after the receipt of the first cherries, that they ran from 100 or 150 and upwards more than the stipulated amount per gallon. It will not do for the plaintiff to say that that was to the advantage of the defendant.

The defendant stipulated for a certain cherry. It was not given that cherry, and there is no allegation that it had waived the performance of any part of the contract. The plaintiff has, therefore, failed to prove the full performance of the conditions precedent upon its part to entitle it to recover.

Upon the question of fact also as to whether these were in fact dipping cherries, within the meaning of the contract, I am satisfied that the plaintiff has failed to meet the burden of proof. Plaintiff says that these were shipped over experimentally to determine how they would stand the trip and the hot weather in which they were shipped. But it was further said *that they were the same cherries that the defendant might expect under its contract.* Plaintiff afterwards sent over ten barrels of cherries, hoping that they would be in better condition and more satisfactory to the defendant. These ten barrels the defendant took from Delapenha upon the distinct understanding that he was taking them from the agents themselves to see what they were. Part of these were sent out to fill an order; and the rest of them, five barrels, defendant was compelled to sell out as " whole and broken cherries," a grade below dipping cherries. It is not at all likely that defendant would sell these as a grade below dipping cherries if they were capable of being sent out as dipping cherries, which was a special cherry that undoubtedly would bring a higher price. It is true that the testimony on the part of the defendant is that it made some profit and did not lose anything by selling these as whole and broken cherries. But it is entitled to its contract rights. Its contract gave it the right to the dipping cherries for the price that it paid for them. The evidence does not show with any degree of clearness that these cherries were at all uniform in size. The weight of evidence is to the contrary. According to Mr. Delapenha, the plaintiff's agent, cherries must be uniform in size to be proper to be used for dipping cherries, because the boxes in which those cherries were sold are got up in uniform sizes, so that unless the cherries were of uniform size they would not fit in the boxes in regular order as designed. The whole evidence seems to indicate that this was an experiment on the part of these French people to get a cherry over here equal to that sold by Hungerford of Rochester. They

apparently have failed to get the high grade cherry that was called for by the contract, and the verdict of the jury to the effect that these were dipping cherries is, to my mind, clearly against the weight of evidence. In this connection the counsel for the defendant asked the court to charge that unless the jury found that the shipment of the four barrels complied in all respects with the contract of sale they must find for the defendant. To this the court answered: "Complied generally with the contract. I will so charge." To this counsel took an exception. I think the defendant was entitled to the charge as asked for, that the barrels as shipped should comply in all respects with the contract, and otherwise that the defendant was justified in rescinding the contract.

There are other questions raised in the case, as to whether this delivery was in France or whether it was in New York, and as to the measure of damages adopted, which it is not necessary to discuss, because in my view the verdict must be set aside as against the weight of evidence, and for failure to prove under the pleadings that the conditions were fully performed by the plaintiff.

I, therefore, recommend a reversal of the judgment and order and the granting of a new trial, with costs to the appellant to abide the event.

Clarke, P. J., Dowling, Page and Philbin, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.